`                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
                       INDIANAPOLIS DIVISION

**GRACE DICKINSON,**               )
                                   )
      **Plaintiff,**          )
                                   )      1:04-cv-1513-SEB-JLP
  **vs.**                          )
                                   )
**LABOR SERVICES COMPANY,**        )
                                   )
      **Defendant.**          )

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the court on the Defendant's Motion for Summary Judgment. For the reasons discussed in this entry, we deny the motion.

### *Factual Background*

Plaintiff, Grace Dickinson, was a long haul truck driver for Defendant, Labor Services Company ("LSC"). Dickinson began working for LSC in July of 2002. LSC leases its truck drivers to companies who need loads driven from place to place throughout the United States and Canada. In Indianapolis, Indiana, LSC leases its drivers to Regal Beloit for purposes of hauling electric motors and generators from its Indianapolis warehouse. Dickinson received her dispatches from the sole LSC management employee in Indianapolis, Ward Farlowe, who works out of the Regal Beloit warehouse.

On June 10, 2004, Dickinson went to Farlowe's office at the warehouse

to give him a message from her husband, who also drove for LSC, before picking up her own assigned load.  While she was there, Farlowe told Dickinson that a dock supervisor was mad at her.  When she inquired as to why he was mad, Farlowe told her that it was because the dock supervisor knew what she did while she was out on the road, yet she would not show him her "tits."  According to Dickinson, the reference to "what she did out on the road" was one that she had heard other truckers say that Farlowe used when making remarks to them about sexual exploits he alleged that Dickinson engaged in while hauling loads to Canada.  Dickinson later proceeded to Canada with her assigned load and returned on June 15, 2004.

On the day of her return from Canada, Dickinson reinjured an elbow which had previously been the cause of an extended workers compensation absence.  The injury prevented her from driving a truck.  Between June 10 and the date of her injury (June 15), Dickinson had been attempting to contact Harvey Fox, LSC's Director of Safety and Personnel, to complain about the comments Farlowe had made during the June 10th discussion in his office, but was unable to reach Fox.  She finally reached him on June 18, 2004, by telephone and described to him the comments Farlowe had made to her on June 10.  She also told Fox that this was not the first time Farlowe had made inappropriate comments to her.  Dickinson explained to Fox that she was offended by the comments and wanted them stopped.  Fox said he would

investigate, and later called Dickinson back to request that she write out a statement of what occurred.

Also on June 18, 2004, Dickinson was contacted by LSC's workers compensation insurance carrier, AIG.  The AIG representative indicated to Dickinson that LSC had a light duty assignment at the warehouse.  She was told by the insurer that she should return to work in that light duty role, and a letter written by Fox, but never sent, dated June 18, 2004 confirmed that Dickinson was to begin the light duty responsibilities at the warehouse on June 21, 2004.  However, prior to that date, Fox had informed Dickinson that she would not be allowed to return to the warehouse because it would entail having to work around Farlowe, about whom she had complained.  In a second letter – one that he did send – to Dickinson, also dated June 18, 2004, Fox wrote that: (1) the company would be investigating her complaint; (2) she was to put her complaint in writing within seven days; and, (3) she was suspended from work during the course of the investigation so to avoid her having contact with Farlowe.

The written statement requested by Fox was later provided by Dickinson in which she indicated that she had ignored other inappropriate comments from Farlowe in the past because she needed her job.  However, she now insisted that the comments stop.  She said that, as a female truck driver, she knows and expects that she will be the target of a certain degree of such talk

while on the road, but does not expect to have to put up with it from her boss. Dickinson also pointed out that there was another male individual in the office when Farlowe made the comments, but she did not know that person's name.

Janet Nordstrom, Fox's assistant and the person in charge of handling LSC workers compensation issues in Indianapolis, faxed a note to AIG on June 24, 2004 inquiring whether the insurer was going to pay TTD benefits to Dickinson.  Fox did not notify AIG that the company had not allowed Dickinson to return to the light duty position at the warehouse and Fox does not know of anyone else at LSC who might have provided the carrier with that information. In a letter dated June 25, 2004, AIG wrote a letter to Dickinson informing her that she would not be receiving temporary total disability ("TTD") payments under workers compensation insurance because of the light duty work available to her at LSC.  A copy of that June 25th AIG letter was sent to Janet Nordstrom as well.  Consequently, LSC knew that Dickinson went without work or TTD payments from mid-June 2004 through September 23,  2004, when she was released by her doctor to return to full duties.  In fact, Dickinson has never received any further payment or benefits from LSC for this period.

At the end of September, Dickinson received a letter dated September 28, 2004, from Fox indicating that the investigation had been completed and that

the company had concluded that she filed a false report about Farlowe's comments and also that she falsely claimed to the EEOC that she was retaliated against for making the complaint.  The LSC investigation consisted of Fox's request for and receipt of written statements from Dickinson, Farlowe and John Hefernan, the "other individual" in the warehouse office on June 10, 2004, to whom Dickinson had alluded.  Those statements were provided to Fox the first week of July.  Fox reports that he did not personally interview anyone, but merely read the written statements, on the basis of which he reached his conclusion that Dickinson had lied.[1]  Despite several telephone calls from Dickinson to Fox in the interim regarding the status of the investigation, Fox did not tell Dickinson what he had decided until the end of September, when she was told that she could return to work, but would no longer receive her dispatches from Mr. Farlowe in Indianapolis.  In a September 28, 2004 letter, she was told that she would be required to communicate with a dispatcher in Bloomington, Minnesota, in order to obtain her loads and that any further false reports by her could result in her termination.

Instead of continuing her employment with LSC and obtaining dispatch assignments from Minnesota, Dickinson and her husband resigned from LSC

---

[1] Fox's representation in his letter of September 28, 2004 to Dickinson that he had spoken to "the witness" and "others" is belied by his sworn deposition testimony to the contrary.

to work as a driving team for another trucking company.  Dickinson wrote on her resignation slip that the reason she left LSC was because she was treated unfairly.  She then filed this lawsuit claiming sexual harassment and retaliation in violation of Title VII.

### *Summary Judgment Standard*

On a motion for summary judgment, the burden rests on the moving party, LSC in this case, to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the nonmovant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment.  *Id.* at 322-23.  "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Celotex*, 477 U.S. at 322-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986).

Summary judgment is not a substitute for a trial on the merits, nor is it

a vehicle for resolving factual disputes. *Waldridge*, 24 F.3d at 290. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the nonmovant. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997). If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. We note that the Seventh Circuit has determined that the summary judgment standard is to be applied with special scrutiny to employment discrimination cases because intent and credibility are such critical issues. *See, Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir.2000). To that end, we carefully review affidavits and depositions for circumstantial proof which, if believed, would show discrimination. However, it is equally clear that employment discrimination cases are not governed by a separate set of rules and remain amenable to disposition by summary judgment in those circumstances where a careful review leaves us with the conclusion that there is no genuine dispute as to the material facts and a jury could find but one way. *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997). In this case, we conclude that a jury could draw more than one conclusion regarding the merits of Plaintiff's retaliation claim based on the evidence of record.

### *Discussion*

LSC has requested summary judgment on both counts of Plaintiff's Complaint, supporting its request with deposition testimony and exhibits, as well as legal argument in a supporting brief. With respect to Count I, which asserts a sexual harassment claim, LSC argues that the conduct complained of was not severe or pervasive enough to be actionable and that the uncontroverted evidence establishes that Dickinson was not offended by the comments. Though Dickinson points out in her surreply (which addresses other issues) that LSC has ignored her deposition testimony stating that the comments from Farlowe did, in fact, offend her,[2] she has chosen to forego further defense of her harassment claim. Her failure to defend Count I in her responsive brief results in an abandonment of this claim, which permits summary judgment to issue in favor of LSC on that count. *See Palmer v. Marion County*, 327 F.3d 588, 597 (7th Cir. 2003).

Dickinson does defend her claim of retaliation, however, and, as might be

---

[2]In its effort to aggressively defend this lawsuit, LSC has distorted, taken out of context or ignored Plaintiff's deposition testimony to such an extent that concerns have arisen on our part. Plaintiff pointed out these transgressions, but in fact they were not hard to find. Defendant's tactics have been exacerbated by its obvious attempt to cast aspersions on Plaintiff's character by needlessly setting forth her history of workplace injuries and certain prior attendance problems, which clearly have no relevance to the case at hand. Other than the fact that her injury prevented her from taking on more than light duty responsibilities from June to September of 2004, her attendance and injury history is wholly irrelevant. Even in the context of adversarial rhetoric, we expect better than this of counsel.

expected, she focuses her arguments on the most obvious evidence tending to support a vengeful motive on the part of LSC.  During the time period when it investigated her complaint, LSC suspended her from work and, with knowledge of the fact that its insurer would not make payments to Dickinson due to the availability of light work, thus caused her to go without pay or TTD benefits for an extended period of time.  LSC explains its actions as intended to protect Dickinson from having to interact with Farlowe.  Farlowe, according to LSC's passing remark, could not be replaced or reassigned.  Reasonable people might disagree with respect to whether suspension without pay was a protective as opposed to vindictive act; Fox did make it patently clear in his letter to Dickinson that it was the "seriousness" of her complaint of harassment which prompted her suspension.  However, Fox's statement also could be considered to suggest that it was the tone of Dickinson's allegations or the "trouble" they created, rather than Farlowe's presence at the warehouse, which prompted the suspension.

     A retaliation claim under Title VII may be pursued through the direct method of proof, such as with direct evidence of discrimination or with a "convincing mosaic" of circumstantial evidence pointing directly to a discriminatory reason for an employer's adverse action.  *Rhodes v. Illinois Dept. Of Transportation,* 359 F.3d 498, 504 (7th Cir. 2004).  In other words, if a plaintiff produces evidence that she engaged in a protected activity, and as a

result, suffered an adverse employment action, she can successfully avoid summary judgment. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). If the direct method of proof is unattainable, a plaintiff may still prevail under the indirect method, familiarly framed by the proof template provided in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Rhodes*, 359 F.3d at 504.

    Dickinson argues that she has met the direct proof standard by showing that she complained of harassment and that she was suspended from work because of that complaint. Further, she argues, the mosaic of evidence in this case clearly reveals a discriminatory motive for the actions of LSC. At this stage of the proceedings, we find Dickinson's argument persuasive in resisting summary judgment.

    A plaintiff need only believe in good faith that she is opposing or reporting conduct that violates Title VII in order to be engaging in activity protected from retaliatory action by her employer. *Fine v. Ryan International Airlines,* 305 F.3d 746, 752 (7th Cir. 2002). However, LSC contends that Dickinson did not engage in protected activity because the conduct she complained of was so tepid and insubstantial that no reasonable person could think that it amounted to sexual harassment. LSC compares Dickinson's complaint about Farlowe to the sexual harassment complaint made by a male plaintiff in *Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004). We need

not expend much time distinguishing a case where the plaintiff admitted he had not been sexually harassed, stated to a co-worker he was trying to get rid of his female supervisor in "any way possible" and argued to the Seventh Circuit that Title VII does not require a "good faith " belief component to afford protection to someone who "participates" in an investigation even if it may require it from someone who "opposes" any unlawful practice. *Id.* at 889. This is not the circumstance here and the differences between the *Mattson* case and the case at bar are all too apparent to warrant further discussion. Dickinson's complaint to Fox was clearly a protected activity and Fox's own description of Dickinson's allegation as "serious" belies LSC's subsequent arguments to the contrary.

Next, LSC contends that Dickinson suffered no adverse employment action. It states that since she was already unable to work as a driver due to her injury, the suspension had no adverse effect on her. Apparently, in making this argument, LSC does not regard the denial of income as adverse. We think it might feel differently if all its customers decided to stop using its services for a few months, thus denying it income. At the root of LSC's unconvincing argument is its refusal to accept the consequences of its receipt of the AIG letter, dated June 25, 2004, stating that Dickinson's TTD benefits were being terminated. It is undisputed that the local employee/agent responsible for LSC workers compensation matters, Janet Nordstrom, was copied with this letter

and that the letter was placed in Dickinson's file in the Indianapolis office. Fox testified in his deposition that he recognized the letter from the file. Yet LSC has continued to argue that it did not know that Dickinson was not receiving TTD. Clearly, Dickinson is entitled to have a jury determine if LSC's explanation is worthy of belief.

### *Conclusion*

For the reasons set forth in this entry, Defendant's Motion for Summary Judgment **(Document #39)** is GRANTED IN PART and DENIED IN PART. Defendant is entitled to judgment on Count I of Plaintiff's Complaint, which sets forth a claim of sexual harassment, under Title VII of the Civil Rights Act, which Plaintiff has now abandoned. Count II of Plaintiff's Complaint, which sets forth a claim of retaliation under Title VII, survives, and the parties will, accordingly, proceed to trial on that count.

09/01/2006

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:
Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

Marissa Ross
LITTLER MENDELSON, P.C.
maross@littler.com

Gregory A. Stowers
STOWERS & WEDDLE PC
gstowers@swh-law.com

Adam C. Wit
LITTLER MENDELSON PC
awit@littler.com